PEOPLE v HOLBROOK

1. CRIMINAL LAW—HABITUAL CRIMINALS—SEPARATE OFFENSE.

A person charged under Michigan's habitual criminal statutes is not thereby charged with commission of a separate criminal offense (MCLA 769.12, 769.13).

2. APPEAL AND ERROR—CASE PRECEDENT—RETROACTIVITY—PROSPECTIVITY.

A decision of the Court of Appeals which only follows the settled law of the state is not prospective only in application where it does not set forth new law.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—RIGHT TO SPEEDY TRIAL—ASSERTION OF RIGHT.

In an inquiry into the deprivation of the right to a speedy trial a defendant's assertion of, or his failure to assert, the right is not alone determinative, but is one of the factors to be considered.

4. CRIMINAL LAW—HABITUAL CRIMINALS—FOURTH OFFENDER—STATUTES—DELAY IN BRINGING TO TRIAL—PREJUDICE.

Dismissal of a supplemental information charging a defendant as a fourth offender because more than 180 days had elapsed before the defendant was brought to trial was error where the prosecutor had repeatedly requested that the case be brought to trial and the trial judge failed to place the case on the trial calendar, and where no prejudice to the defendant is shown because of the delay (MCLA 769.12, 780.131).

Appeal from Jackson, Gordon W. Britten, J. Submitted Division 2 March 13, 1975, at Lansing. (Docket No. 19705.) Decided April 25, 1975. Leave to appeal granted, 395 Mich 752.

Nathan D. Holbrook was charged as a fourth

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 2.

[2] 5 Am Jur 2d, Appeal and Error § 729.

[3] 21 Am Jur 2d, Criminal Law §§ 245, 253, 254.

offender under the statute and the charge subsequently dismissed. The people appeal by leave granted. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *James M. Justin,* Assistant Prosecuting Attorney, for the people.

*John A. Lydick,* Assistant State Appellate Defender, for defendant.

Before: DANHOF, P. J., and D. E. HOLBROOK, JR. and O'HARA,* JJ.

O'HARA, J. This is an appeal[1] by the people from the denial of a motion for rehearing upon an order of the trial judge dismissing a supplemental information filed under our so-called "fourth offender" statute. MCLA 769.12; MSA 28.1084; MCLA 769.13; MSA 28.1085.

In an unaccustomed role as appellee the State Appellate Defender's office mounted a full scale frontal attack on this Court's opinion in *People v Ungurean,* 51 Mich App 262; 214 NW2d 873 (1974).

The attack was buttressed by a particularly well documented brief and a vigorous and articulate oral presentation. The people through the Appellate Division of the Jackson County Prosecuting Attorney's office met the challenge with equal skill in advocacy.

The appellee characterized *Ungurean, supra,* as reaching an absurd result, and violating virtually

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] This case is before us on delayed appeal granted.

all recognized rules of statutory construction. Its reconsideration and overruling was strongly urged.

We face this issue squarely. We decline to change our holding in *Ungurean.* We do so in spite of our complimentary remarks as to appellee's presentation and for what to us is a reason well grounded in logic. The converse of our position would result in according to any trial judge controlling his own docket, as is the situation in the case at bar, and who might not be sympathetic to increased punishment for fourth offenders, the unfettered right to override a legislative enactment expressive of public policy. The issue is of major significance to our criminal jurisprudence.

The fundamental fallacy in the position of the appellee and by the trial judge is that they both overlook, or at least disregard, what we so carefully noted and emphasized in *Ungurean.* The information under the fourth offender statute *does not charge a separate criminal offense.* Hence the plethora of case law dealing with the right to a speedy trial as related to the 180-day rule is simply inapposite. In his from-the-bench ruling on the first dismissal the trial judge said, as clearly as can be said, that he relied on the statute.[2] We quote him verbatim:

"So the court grants the motion under [MCLA 780.131 *et seq.;* MSA 28.969(1) *et seq.* (the 180-day rule)] and the charge contained under supplemental information filed on November 27, 1972, charging the defendant with being guilty of the *offense* of *fourth felony* under the provisions of the habitual criminal section of the Criminal Code of the State of Michigan, wherein defendant is dismissed, and with prejudice, discharged from all holds rising out of that supplemental information filed." (Emphasis supplied.)

---

[2] MCLA 780.131; MSA 28.969(1); MCLA 780.133; MSA 28.969(3).

We said with studied care in *Ungurean:*

"[I]t is firmly established in the jurisprudence of this state that under Michigan's habitual criminal provisions the accused is not charged with commission of a separate criminal offense." 51 Mich App at 265.

We did not dream this up. We followed binding Supreme Court precedent. Former Justice ADAMS speaking for a clear majority said:

"[U]nder Michigan's habitual criminal act, the accused is not charged with the commission of a crime." *People v Hatt,* 384 Mich 302, 306; 181 NW2d 912 (1970).

Earlier former Justice VOELKER speaking again for a clear majority of the Supreme Court wrote:

"[W]e think, that the legislature did not intend to make a separate substantive crime out of being a habitual criminal but rather, for deterrent purposes, intended to augment the punishment for second or subsequent felonies. Since the legislature did not except escaping prison from our second offender statute we can only infer that it intended the latter statute to apply to all felonies. This we held with little if any discussion in *In re Wilson,* 295 Mich 179; 294 NW 145 (1940)." *People v Shotwell,* 352 Mich 42, 46; 88 NW2d 313 (1958).

We, the panel of this Court, and the trial judge did nothing in *Ungurean* but follow the law of this state as settled by our Supreme Court. This, as we understand it, is our oath-bound duty.

Whence comes then this holding by the trial judge that even though he was bound by *Ungurean* it was prospective, and not retrospective, and therefore not applicable herein? Retroactivity or prospectivity relate to *new* law. The issue is simply not in this case. The trial judge was in error, when

on the motion for rehearing, he held the ruling was prospective only.

So now what of the constitutional ground of the dismissal of the information dehors the 180-day rule?

This, of course, mandates a discussion of *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972), and its Michigan counterpart in *People v Grimmett*, 388 Mich 590; 202 NW2d 278 (1972).

To the extent that both cases relieve the defendant of the burden of demanding a speedy trial or a waiver under "clearly identifiable circumstances" they both apply. At first reading it would seem the four factor test was violated. A careful reading of the whole trial court record leads to a contrary conclusion.

First, let us not be unaware that *Grimmett* quoted with approval from *Barker v Wingo, supra.*

" 'We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right. *This does not mean, however, that the defendant has no responsibility to assert his right.* We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right. Such a formulation avoids the rigidities of the demand-waiver rule and the resulting possible unfairness in its application. It allows the trial court to exercise a judicial discretion based on the circumstances, including due consideration of any applicable formal procedural rule. It would permit, for example, a court to attach a different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client or from a situation in which no counsel is appointed. It would also allow a court to weigh the frequency and force of the objections as opposed to attaching significant weight to

a purely *pro forma* objection.' " (Emphasis supplied.) 388 Mich at 604–605.

If ever a case fell squarely within the holding of the ultimate voice in Federal constitutional questions this is it. ·

The prosecution did everything in its power in this case to bring the case on for trial short of committing contempt of court or arrogating to itself the right to docket its own cases. Hark to the record in the trial court.

June 28, 1973—The defendant, his counsel and the prosecuting attorney all present in court. The prosecution calls the case, defense counsel asks that the matter *remain* on the jury trial docket and states one day for trial with no motions to follow. The trial court's final remark without setting a date for trial was, "You may sit down * * * Mr. Holbrook".

September 20, 1973—The defendant in court, both counsel present, and the court said: "The matter will be placed upon the trial calendar". No date set.

December 19, 1973—All necessary parties present; the court stated: "The matter will be set down for trial then".

January 4, 1974—The court dismisses the supplemental information as hereinbefore set out.

February 15, 1974—The prosecution reports to the court its learning of this Court's opinion in *Ungurean* and provides the court a copy thereof. Trial counsel advises the court that he no longer represents the defendant and thus service on him was improper and that the defendant must be served personally. The trial court agrees.

February 22, 1974—Personal service established;

State Appellate Defender's Office appointed appellate counsel.

March 8, 1974—The prosecutor again asks rehearing on the motion granting dismissal of the supplemental information. State Appellate Defender's office raises the nonretroactivity of *Ungurean.* Prosecution asks the case in chief be set down for trial "as soon as it can be worked into the court trial schedule". The prosecutor adds: "[T]he people cannot set this court's trial calendar—this court * * * and it alone decides what cases to set for trial and when to set them * * * So, again the people would ask that the application for rehearing be granted, and the motion for ordering dismissal of the case be set aside, and the matter be set down for trial as soon as possible."

The trial court then ruled: (1) the people failed to bring the motion on a timely basis, (2) *Ungurean* was not retroactive and that the defendant was prejudiced by the delay.

As the prosecutor properly observed: "[I]t is coming down to the fact that the court, on its own, can decide not to set a case for trial in spite of the fact that both sides are ready * * * and then ultimately the case would be dismissed."

We find no violation of the four factor requirement in *Grimmett.* As to the alleged tardiness in filing the motion for rehearing we decline to hold it fatal since both parties and the trial judge relied erroneously on GCR 1963, 527.2, for the time limit when in fact MCLA 770.2; MSA 28.1099 controls.

In finality we conclude it was the trial judge who either intentionally or arbitrarily caused the 180-day rule to be violated. Even so no prejudice to defendant is shown. The defendant is the same defendant who was convicted of a fourth felony. The record of the conviction has not changed. No

witnesses are involved. The issue remains the same as it was at the time the supplemental information was filed and when the trial judge erroneously dismissed it.

We find absolutely no dereliction of duty of the office of the Jackson County prosecutor. The fact, attested to us on oral argument by officers of the Court, that the defendant is no longer incarcerated is not to the point. What is to the point is that a trial court setting its own calendar call cannot by its own inaction defeat the plain intendment of a statute.

The order of the trial judge denying the motion for rehearing is reversed. The hearing on the merits on the supplemental information is not barred. The supplemental information is in full force and effect. The case is remanded to the Jackson County Circuit Court to another judge of that county. Whether the Jackson County prosecutor chooses to proceed thereunder is his business, not ours. All the statute provides is that he *may* so proceed if he deems it appropriate.

Reversed and remanded.