PEOPLE v LEROY

Docket No. 86996. Submitted September 4, 1986, at Detroit. Decided
January 21, 1987. Leave to appeal denied, 428 Mich —.

Defendant, David J. Leroy, was convicted, on his plea of guilty, of
breaking and entering and of being a third felony habitual
offender. Defendant appealed and the Court of Appeals, in an
unpublished per curiam opinion, remanded because of proce-
dural errors in accepting defendant's plea to the habitual
offender charge, Docket No. 70257, decided April 6, 1984. The
remand order allowed defendant to withdraw his plea or affirm
it and be resentenced. The record was returned to the Oakland
Circuit Court on May 7, 1984. On January 11, 1985, defendant
moved to dismiss, alleging violation of the 180-day rule inas-
much as defendant was in jail the entire time. The court denied
defendant's motion. Thereafter defendant pled guilty to the
habitual offender charge and was resentenced, Richard D.
Kuhn, J. Defendant appealed.

The Court of Appeals *held:*

The circuit court lost jurisdiction to hear the habitual of-
fender part of the case because of a violation of the 180-day
rule.

1. An inmate's claim that the 180-day rule prohibits his being
prosecuted on an untried charge constitutes a jurisdictional
claim. Defendant's subsequent guilty plea did not waive the
claim.

2. At least 249 days of the delay were attributable to the
prosecution.

3. The fact that the remand order did not explicitly reverse
defendant's habitual offender conviction did not render defen-
dant's status as a convicted habitual offender intact. Thus there

REFERENCES

Am Jur 2d, Appeal and Error §§ 352 *et seq.*

Am Jur 2d, Criminal Law §§ 849 *et seq.;* 857, 858.

Excludable periods of delay under Speedy Trial Act (18 USCS
§ 3161(h)). 46 ALR Fed 358.

See also the annotations in the Index to Annotations under Habit-
ual Criminals and Subsequent Offenders.

remained an untried, pending information to which the 180-day rule might apply.

4. The 180-day rule applies to habitual offender informations.

Affirmed ih part, reversed in part and remanded for resentencing.

1. CRIMINAL LAW — SPEEDY TRIAL — INMATES — 180-DAY RULE —
    GUILTY PLEAS — WAIVER.

   An inmate's claim that the 180-day rule prohibits his being prosecuted on an untried charge constitutes a jurisdictional claim; such a claim therefore is not waived by a subsequent guilty plea to the charge (MCL 780.131; MSA 28.969[1]).

2. CRIMINAL LAW — SPEEDY TRIAL — 180-DAY RULE — GUILTY PLEAS
    — APPEAL.

   Where the Court of Appeals sets aside a guilty plea on an habitual offender charge and remands the case, the charge remains "untried" for purposes of the 180-day rule (MCL 780.131; MSA 28.969[1]).

3. CRIMINAL LAW — SPEEDY TRIAL — INMATES — HABITUAL OFFEND-
    ERS — 180-DAY RULE.

   The 180-day rule applies to habitual offender informations (MCL 780.131; MSA 28.969[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *John L. Kroneman,* Assistant Prosecuting Attorney, for the people.

*Barbara J. Safran,* for defendant on appeal.

Before: M. J. KELLY, P.J., and BEASLEY and CYNAR, JJ.

BEASLEY, J. Defendant, David Joseph Leroy, pled guilty to breaking and entering, in violation of MCL 750.110; MSA 28.305, and to being an habitual offender, third offense, in violation of MCL 769.11; MSA 28.1083, on January 23, 1983. He was sentenced to serve not less than three nor more than ten years in prison on the former charge,

which sentence was vacated in favor of a sentence of not less than five nor more than twenty years on the habitual offender charge. Defendant appealed, and this Court, although otherwise affirming, remanded because the trial judge had failed to properly inform defendant of the maximum sentence possible for the habitual offender charge.[1] On remand, defendant again pled guilty to the habitual offender charge and was again sentenced to not less than five nor more than twenty years in prison. Defendant appeals as of right.

Defendant's sole argument on appeal is that the delay between our decision and the later plea-taking violated the 180-day rule,[2] so that the circuit court lost jurisdiction over him and should have dismissed the case. The prosecutor raises several counterarguments, each of which needs to be addressed.

Our earlier decision in this case was dated April 4, 1984. On May 7, 1984, the record was returned to the circuit court. On January 11, 1985, defendant moved to dismiss for violation of the 180-day rule. On January 31, 1985, the circuit court denied the motion and defendant pled guilty to the habitual offender charge. Defendant was in jail during this entire period.

The prosecutor first argues that defendant waived any recourse to the 180-day rule by later pleading guilty. While there are a few cases that perhaps support this argument,[3] there are also cases holding otherwise. As we observed in *People v Wolak,*[4] the 180-day rule is explicitly a jurisdic-

---

[1] *People v Leroy,* unpublished opinion per curiam of the Court of Appeals, decided April 6, 1984 (Docket No. 70257).

[2] MCL 780.131; MSA 28.969(1).

[3] *People v Parshay,* 104 Mich App 411; 304 NW2d 593 (1981), lv den 411 Mich 1081 (1981).

[4] 153 Mich App 60, 64; 395 NW2d 240 (1986).

tional bar to further prosecution under MCL 780.133; MSA 28.969(3), and usually jurisdictional defects are not deemed waived by guilty pleas.[5] In the within case, we decline to hold that defendant's guilty plea operated to waive the 180-day rule.

The prosecutor also raises an argument which, if legally sound, would nonetheless be unsupported by the facts of this case. He argues that delays attributable to the defendant are not included in the accumulation of time leading to a violation of the 180-day rule and that the statute did not begin to run until the record was returned to the circuit court on May 7, 1984. Even if we assume the prosecutor is correct on this point, the period of time between May 7, 1984, and defendant's motion to dismiss on January 11, 1985, is 249 days, substantially longer than the 180-day limit.

In his brief, the prosecutor makes the following allegation in support of the proposition that much of the delay was attributable to defendant:

> After that date [May 7, 1984], the remand hearing was delayed largely to accommodate Defendant, who, according to assistant prosecutor James Mitchell, was attempting to arrange a favorable plea agreement in exchange for helping police agencies resolve some unsolved cases.

However, the only support found for this allegation in the record is in Mitchell's unilluminating statements in the transcript cited by the prosecutor:

> *Mr. Mitchell:* There was a delay, your Honor. First of all with respect of the matter in the

---

[5] See also *People v Farmer,* 127 Mich App 472; 339 NW2d 218 (1983); *People v Davis,* 123 Mich App 553; 332 NW2d 606 (1983).

delay, we do not believe it was all attributal [sic] to the prosecution.

That there was a period of time, at least a substantial period which would subtract enough time to make us within the 180 days.

Wherein the defendant made certain request of the prosecution consideration which didn't have anything to do with the court case, but other matters.

And that counsel and I had discussion on, and that nothing came of that.

From that point in time, there was really no delay in getting the defendant here, except for a misunderstanding with respect to whether he was at Kingsley or Grass Lake.

So, we would submit, first of all there was no 180-day violation attributal [sic] solely to the prosecution, number one.

These statements of the assistant prosecutor, standing alone without support in the record, are not sufficient to stop the running of the 180 days. The remainder of the record and lower court file is devoid of any indication that defendant did anything whatever which might lengthen the time before his plea was taken. Thus, the prosecutor's argument that delays attributable to defendant defeat application of the 180-day rule are without basis in the record.

The prosecutor also argues that the habitual offender information here was not an "untried charge" and, therefore, the 180-day rule does not apply. By this the prosecutor means that the habitual offender information had already been "tried": that is, the defendant had already pleaded guilty to it. Because our earlier decision did not explicitly reverse defendant's habitual offender conviction, but merely remanded to the trial court for defendant to affirm or withdraw his guilty plea, the prosecutor argues that there was no pending,

untried information. The prosecutor maintains that defendant's status as a convicted habitual offender remained intact.

The prosecutor cites *People v Woodruff*[6] for the proposition that the purpose of MCL 780.131; MSA 28.969(1) is to dispose of untried informations and not to further its numerous other salutary effects, such as protecting concurrent sentences, clearing court dockets of stale charges, or fostering the right to a speedy trial. We do not agree, however, that the information here was already "tried" at the time of the 249-day delay. Our decision explicitly gave defendant the power to withdraw his plea if he so chose. Had he decided to plead not guilty, as was his right, he would have been entitled to a full jury trial on the habitual offender charge, as provided by MCL 769.13; MSA 28.1085. Obviously, this would not be a trial to decide an issue "already tried." The prosecutor argues, however, that defendant did not face an untried charge until the moment he withdrew his plea. If this is the case, and indeed defendant's affirmance of his plea was merely an acknowledgment that the prior "trial" of the case was valid and accurate, then much of the accompanying procedure was superfluous. We need not have directed the trial court to resentence defendant after his plea, and the trial court need not have gone through the litany of rights waived before accepting the plea. Indeed, the trial court need not have "accepted" the plea at all, because defendant would merely be affirming an already accepted plea. A holding to that effect would permit the prosecutor to wait for an unlimited period of time before bringing an information like this to trial. It would clearly thwart the purpose of the Legislature for a defendant to remain incarcerated without the opportunity to

---

[6] 414 Mich 130, 136-138; 323 NW2d 923 (1982).

even enter his plea in a case like this, especially where this Court has ordered that that plea be retaken. In other words, the prosecutor or the court was obligated under our opinion to bring defendant promptly before the trial judge to exercise one of the alternatives afforded him in our decision.

Finally, the prosecutor argues that the 180-day rule does not apply to habitual offender informations at all, and so does not apply in this case. The only cases addressing this point directly are twelve-year-old *People v Ungurean*[7] and eleven-year-old *People v Holbrook.*[8] In *Ungurean,* the defendant's habitual offender information was not brought to trial within the required 180-day period, and the panel agreed that this would be a clear violation of the 180-day rule if it applied. It held, however, that the rule did not apply. The panel's reasoning was that the statute specifies that untried charges "setting forth against any inmate of a penal institution of this state a *criminal offense* for which a prison sentence might be imposed upon conviction" shall be brought to trial within 180 days. The *Ungurean* Court held that being an habitual offender is not a separate criminal offense but merely a condition which allows the court to enhance a sentence. The panel buttressed its argument by reference to MCL 769.13; MSA 28.1085, which establishes the procedures for habitual offender informations and which distinguishes between "conviction" for the underlying offense and "sentencing" for habitual offender status.[9]

*Holbrook* was decided by a panel nearly identical to that which decided *Ungurean.* The panel

---

[7] 51 Mich App 262; 214 NW2d 873 (1974).

[8] 60 Mich App 628; 231 NW2d 469 (1975).

[9] *Ungurean, supra,* pp 265-267.

explicitly declined to change its earlier holding, reiterating as its central reason the fact that an information under the habitual offender statute does not charge a separate criminal offense.[10] *Ungurean* and *Holbrook* were cited by the Supreme Court in *People v Hendrick*,[11] but only for the proposition that an habitual offender information does not charge a separate criminal offense. *Hendrick* held that a prosecutor could properly delay until after sentencing of a convicted felon to file a supplemental information under the habitual offender statute, but only when the delay is due to the fact that the defendant's prior convictions occurred out-of-state.

Unlike the felony-firearm statute,[12] the habitual offender statute contains no language suggesting that being an habitual offender is a felony or misdemeanor, and the Supreme Court has held that it is not.[13] The question, however, is not simply whether a separate criminal offense has been charged, but rather whether our procedural rules, statutes and safeguards will be withheld. The procedures established for trying a defendant on an habitual offender information are remarkably similar to those used in a trial for a criminal offense. A part of MCL 769.13; MSA 28.1085, which neither *Ungurean* nor *Holbrook* discussed, reads as follows:

> The court in which the conviction was had shall cause the person to be brought before it and shall inform him of the allegations contained in the information, and of his right to be tried on the allegations, and require the offender to say

---

[10] *Holbrook, supra,* pp 630-631.

[11] 398 Mich 410, 417; 247 NW2d 840 (1976).

[12] MCL 750.227b; MSA 28.424(2).

[13] *Wayne Co Prosecutor v Recorder's Court Judge,* 406 Mich 374, 389-390; 280 NW2d 793 (1979).

whether he is the same person as charged in the information or not. If the offender says he is not the same person, or remains silent, the court shall enter a plea of not guilty, and a jury of 12 jurors shall be impaneled from the petit jurors serving at the then or a following term of court to determine the issues raised by the information and plea. The accused may waive trial by jury in the manner provided by this act. The usual practice in the trial of criminal actions shall be followed in the impaneling of a jury and the trial of the issue. The prosecuting officer and the accused shall each be allowed 5 peremptory challenges. If the accused pleads guilty to the information or if the jury returns a verdict of guilty, the court may sentence the offender to the punishment prescribed in section 10, 11, or 12, and shall vacate the previous sentence, deducting from the new sentence all time actually served on the vacated sentence if required.

While the panel in *Ungurean* was correct to observe that the "only issue" at an habitual offender trial "relates to whether the defendant is the same person who was duly convicted of the prior felony or felonies alleged in the information,"[14] nonetheless, a full trial with all the safeguards and trappings of a trial for a criminal offense is afforded. When we speak of habitual offender informations in briefs and opinions, we usually say that the defendant is "charged" with being an habitual offender. When a defendant pleads guilty to being an habitual offender, as here, the judge recites the entire colloquy of rights waived. The statute does not call being an habitual offender a felony or misdemeanor, but we treat it exactly as if it were, except that the sentence imposed depends on the underlying offense.

Indeed, one could say fairly that when our cases

[14] *Ungurean, supra,* p 266.

focus on the procedural aspects of habitual offender informations at all, they concentrate not on the differences between those informations and separate criminal charges, but on the similarities. In *People v Brownbridge*,[15] the Supreme Court held that the admonitions prescribed in GCR 1963, 785.7, now MCR 6.101(F), must be given to a defendant who pleads guilty to being an habitual offender. In *People v Van Auker*,[16] this Court similarly held that a defendant on trial on an habitual offender charge which could result in life imprisonment was entitled to twenty peremptory challenges at jury selection. In *People v Reginald Harris*,[17] we held that the two-thirds sentencing rule of *People v Tanner*[18] applies to habitual offender convictions. In *People v Fountain (After Remand)*,[19] we held that proceedings under the habitual offender statute are distinct from proceedings on the substantive offense, so that a court could lose jurisdiction over one without losing it over the other. An exception to this trend is *People v Stevens*,[20] holding that an habitual offender information does not represent the same offense as the substantive crime, so that considerations of double jeopardy do not apply.

As already noted, the Supreme Court in *Woodruff, supra,* cited by both parties here, pointed out that the purpose of the 180-day rule is to dispose of untried warrants, indictments, *informations* or complaints against inmates of penal institutions of this state. This purpose would not be served by

[15] 414 Mich 393; 325 NW2d 125 (1982).

[16] 111 Mich App 478, 485-487; 314 NW2d 657 (1981).

[17] 80 Mich App 228, 231-233; 263 NW2d 40 (1977), lv den 406 Mich 860 (1979).

[18] 387 Mich 683; 199 NW2d 202 (1972).

[19] 77 Mich App 71, 75; 257 NW2d 671 (1977), rev'd on other grounds 407 Mich 96 (1979).

[20] 130 Mich App 1, 6-8; 343 NW2d 219 (1983).

allowing supplemental informations to stand untried indefinitely. The rule of *People v Shelton,*[21] requiring that supplemental informations be filed within fourteen days of arraignment, demonstrates the legitimate concern that habitual offender charges be expeditiously disposed of. Both *Woodruff* and *Shelton,* which undertake to clarify our understanding of the 180-day rule and the habitual offender statute, were decided by the Supreme Court some eight years after the *Ungurean* decision and seven years after *Holbrook.* With that in mind, we doubt that the present Supreme Court would follow *Ungurean* or *Holbrook.* We hold that the 180-day rule does apply to habitual offender informations.

Because the delay between our earlier decision and defendant's plea hearing was in excess of three hundred days, and because the minimum amount of that time which must be charged against the prosecutor is 249 days, we believe that under MCL 780.133; MSA 28.969(3), the circuit court lost jurisdiction to hear the habitual offender part of the case. Therefore, the habitual offender information is dismissed. Naturally, the breaking and entering conviction, which was not challenged on appeal, remains.[22] We, therefore, remand this case to the trial court for resentencing on the breaking and entering charge alone.

Affirmed in part, reversed in part and remanded for resentencing.

---

[21] 412 Mich 565; 315 NW2d 537 (1982).

[22] The breaking and entering conviction has already been affirmed in our previous opinion.