GAY v. WEBSTER.

1. STATUTES—CONSTRUCTION OF PENAL STATUTES—LEGISLATIVE INTENT.

Penal statutes are to be strictly construed and in the absence of ambiguity there is no room for reasoning as to the intention of the legislature.

2. WATERS AND WATERCOURSES — ICE-CUTTING — STATUTES — BARRICADES.

Statute imposing penalty for violation of duty to erect barricades "not less than 10 feet from the edge of the opening" in any stream, pond or lake upon persons engaged in procuring ice therefrom *held*, inapplicable, in action for negligent death of plaintiff's minor decedent, to "ice scoring or sawing with engine power where the saw does not penetrate the full thickness of the ice" (3 Comp. Laws 1929, §§ 16801, 16803).

3. SAME—NEGLIGENCE—COMMON LAW—OPENINGS IN ICE.

Harvesters of ice from waters which public has right to use have duty to protect openings so that they shall not be traps into which the unwary may fall.

4. NEGLIGENCE—COMMON LAW—EVIDENCE—JURY QUESTION.

In action for death of 11-½-year old boy skater who was fatally injured when he came into contact with engine-driven ice buzz saw, operated on a public mill pond where defendants had harvested ice for many years, evidence of common-law negligence on part of defendant *held*, insufficient to render question one for consideration by jury.

Appeal from Eaton; McPeek (Russell R.), J. Submitted June 3, 1936. (Docket No. 53, Calendar No. 38,942.) Decided October 5, 1936.

Case by Edward Gay, administrator of the estate of Edward W. Gay, deceased, against Will E. Web-ster and Clyde I. Webster, copartners doing business as H. P. Webster & Sons, for fatal injuries sustained by decedent while skating when he came into contact with ice-cutting machine. Verdict and judgment for plaintiff. Defendants appeal. Reversed, without a new trial.

*Richard J. Shaull* and *Rosslyn L. Sowers,* for plaintiff.

*G. E. McArthur,* for defendants.

Bushnell, J. Plaintiff's decedent, a boy of 11-½ years, came to his death following an accident sustained while defendants' employees were operating a special ice-cutting machine on the public mill pond in the city of Eaton Rapids. Defendants have harvested ice on the mill pond for many years with a circular saw propelled by a gasoline engine and mounted on a steel chassis. The saw is used to score the ice into square blocks; it does not cut through the entire thickness of the ice, but makes a cut six or seven inches deep; the blocks of ice are then spudded loose and floated to defendants' ice house. The boys of the neighborhood, skating upon the mill pond, are in the habit of following the moving buzz saw and catching the small pieces of flying ice in their cupped hands.

On the date of the accident, January 29, 1935, about 4 p. m., two of defendants' employees had completed the east and west cutting and were just

beginning to score the ice in a north and south direction. One was pulling the saw chassis and the other was riding the guides which keep the apparatus operating in a straight line; neither of these men saw the accident. Plaintiff's witness, Cole, the only person who actually witnessed the accident was about 70 feet away. He testified:

"I saw the boy slide into the saw. He was skating violently. He skated out around behind some other boys, and he came back and made an angle, kind of down on his hands and knees like. * * * I seen the men cutting ice out there. I seen the boys skating around out there. I seen this one little fellow hit the saw, he dropped on his hands like, skidded into it, on the angle. He was not squarely behind the saw."

Witness French, a boy of 12, said:

"I didn't see the Gay boy at the time he went down; the saw had just started in from the north running back at about that time, and the Gay boy was about 15 feet from me and he was about straight like behind the saw, and when I first saw him he was from 16 to 19 feet from the saw; I was 20 feet away and a little east of the saw, and the Gay boy was more direct behind the saw. I cannot say how long he had been lying there when I saw him."

When picked up from the ice in the rear of the saw, plaintiff's decedent had the thumb of his right hand cut from the base of his first finger, it was severed and hanging from the skin and tendons; his skull was cut through the scalp and in the cavity, which began above the right eye extending back through the bone about three inches, there were slivers of bone and material, referred to by one of the attending physicians as dust, with oozing brain

tissue. His cap and glove were cut and found near the body.

The circular saw was equipped with a guard similar to that of a bicycle fender over about one-quarter of the blade, leaving the remainder of the teeth exposed between the guard and the ice.

Defendants requested a directed verdict at the close of plaintiff's testimony, claiming there was no proof of actionable negligence. The motion was renewed at the close of defendants' case, both motions being denied. After the finding of the jury in favor of plaintiff in the sum of $1,875, defendant asked for a judgment *non obstante veredicto.*

The statute, 3 Comp. Laws 1929, § 16801, makes it the duty of "any person or persons who are, or who hereafter may be, engaged in the procuring of ice from any of the streams, ponds or lakes of this State to erect, or cause to be erected, place, or cause to be placed, at or near all places where they shall be cutting ice, suitable danger signals and barricades. Such barricades shall consist of cross-bars upon which a pole, rope, chain or rail shall be laid at a height not less than three feet above the ice and shall be placed not less than ten feet from the edge of the opening."

This statute, first enacted in 1877 (Act No. 100, Pub. Acts 1877), is penal in nature and neglect or refusal to comply therewith is declared to be a misdemeanor (3 Comp. Laws 1929, § 16803).

Barricades were not erected by defendants and the jury was instructed that the phrase "from the edge of the opening" might be regarded as meaning from the edge of the outside cutting. The court submitted the case to the jury upon the issue of common negligence as well as under the violation of the statute, but did not give consideration to plaintiff's theory of attractive nuisance.

Penal statutes are to be strictly construed and in the absence of ambiguity, there is no room for reasoning as to the intention of the legislature. *People v. Consumers Power Co.,* 275 Mich. 86.

The statute does not cover ice scoring or sawing with engine power where the saw does not penetrate the full thickness of the ice; it plainly reads that barricades "shall be placed not less than ten feet from the edge of the opening." The statute does not impose a duty to barricade an ice field before cutting, but there is a statutory duty to barricade openings made by the cutting.

The right to harvest ice may be admitted and yet where the public has the right to use that ice, there is imposed a duty of protecting any openings that may be made so that they shall not be traps into which the unwary may fall. See, in this regard, *Syneszewski* v. *Schmidt,* 153 Mich. 438; *Parsons* v. *E. I. DuPont de Nemours Powder Co.,* 198 Mich. 409 (L. R. A. 1918 A, 406, 16 N. C. C. A. 625), and annotations in L. R. A. 1918 A, pps. 408–411; 21 L. R. A. 723. There is not sufficient evidence of common-law negligence on the part of the defendants to render this phase of the case a jury question.

The judgment is reversed without a new trial and, with costs to appellant.

NORTH, C. J., and FEAD, WIEST, BUTZEL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.