PEOPLE v SMITH

Docket No. 89414. Argued April 3, 1991 (Calendar No. 7). Decided
    September 23, 1991.

Rosie Smith escaped from a Department of Corrections facility.
    Thereafter, she was apprehended, charged with, and convicted
    of larceny in a building; was sentenced; and was returned to a
    Department of Corrections facility. Subsequently, she pleaded
    guilty in the Detroit Recorder's Court, Robert L. Evans, J., of
    prison escape after her motion to quash the charge on the basis
    of a violation of the rule that she be brought to trial within 180
    days was denied. She was sentenced consecutively to the sen-
    tence she was serving at the time of the escape and to the
    sentence for the larceny offense. The Court of Appeals, SAWYER
    and GILLIS, JJ. (GRIFFIN, P.J., dissenting), reversed, holding that
    Smith's guilty plea did not waive application of the 180-day
    rule (Docket No. 110110). The people appeal.

    In opinions by Justice LEVIN, joined by Justices GRIFFIN and
    MALLETT, and by Justice BOYLE, joined by Justices RILEY and
    GRIFFIN, the Supreme Court *held:*

    The 180-day rule does not apply in this case. *People v
    Woodruff,* 414 Mich 130 (1982), which held that the 180-day
    rule applies without regard to whether a concurrent or consec-
    utive sentence is or might be imposed, was incorrectly decided.

    Justice LEVIN, joined by Justices GRIFFIN and MALLETT,
    stated:

    The 180-day rule does not apply to a charge of a criminal
    offense committed by an inmate in a correctional facility after
    the inmate has escaped and before the inmate has been re-
    turned to the custody of the Department of Corrections.

    Justice BOYLE, joined by Justices RILEY and GRIFFIN, stated:

    Assuming the applicability of the 180-day rule, a defendant's
    unconditional guilty plea will waive any claim of error based
    on its violation. Violation of the statute is a nonjurisdictional
    defect that does not survive an unconditional guilty plea.

    Reversed; conviction reinstated.

    Justice BRICKLEY, joined by Chief Justice CAVANAGH, dissent-
    ing, stated that the 180-day rule applies to a prisoner in the
    defendant's circumstances. Although the defendant waived her

constitutional right to a speedy trial with her unconditional guilty plea, the plea did not amount to a waiver of her claim that the 180-day rule was violated. Amendments of the rule were not effective until after she pleaded guilty, and the object and purpose of the statute supports the conclusion.

183 Mich App 537; 455 NW2d 719 (1990) reversed.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Research, Training and Appeals, and *John P. Puleo* and *Thomas Chambers,* Assistant Prosecuting Attorneys, for the people.

*Marcia J. Covert* for the defendant.

LEVIN, J. Rosie Smith escaped from a Michigan Department of Corrections facility. She was apprehended on a larceny charge, convicted, sentenced, and returned to a Michigan Department of Corrections facility to serve the sentence.

Smith was subsequently arraigned on a charge of prison escape, and pleaded guilty after her motion to quash the charge for violation of the 180-day rule[1] was denied. Smith was sentenced to

---

[1] MCL 780.131; MSA 28.969(1). The 180-day rule as amended by 1988 PA 400 provides:

(1) Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the inmate and a request for final disposition of the warrant, indictment, information, or complaint. The request shall be accompanied by a statement setting forth the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time or disciplinary credits earned, the time of parole eligibility of the prisoner, and

serve a term of six months to five years in prison consecutively to the sentence she was serving when she escaped and the sentence for the larceny offense.

A divided panel of the Court of Appeals reversed,[2] holding that the plea of guilty did not waive application of the 180-day rule because the statute provides that when the rule is violated "no court of this state shall any longer have jurisdiction" to try the charged offense.[3]

The people contend that Smith's unconditional guilty plea waived any claim she might otherwise assert that the 180-day rule barred prosecution on the charge of prison escape.

A predicate of Smith's claim is this Court's per curiam decision in *People v Woodruff*, 414 Mich 130; 323 NW2d 923 (1982), that the 180-day rule applies without regard to whether a concurrent or consecutive sentence is or might be imposed. We are now persuaded that *Woodruff* was incorrectly decided, and that the view expressed in *People v Loney*, 12 Mich App 288, 292; 162 NW2d 832 (1968),[4] that the 180-day rule does not apply in

any decisions of the parole board relating to the prisoner. The written notice and statement shall be delivered by certified mail.

(2) This section does not apply to a warrant, indictment, information, or complaint arising from either of the following:

(a) A criminal offense committed by an inmate of a state correctional facility while incarcerated in the correctional facility.

(b) A criminal offense committed by an inmate of a state correctional facility after the inmate has escaped from the correctional facility and before he or she has been returned to the custody of the department of corrections.

1988 PA 400 became effective on March 30, 1989.

[2] 183 Mich App 537; 455 NW2d 719 (1990).

[3] MCL 780.133; MSA 28.969(3). See n 1.

[4] Similarly see *People v Ewing*, 101 Mich App 51, 59-60; 301 NW2d 8 (1980). But see *People v Moore*, 96 Mich App 754, 761-762; 293

such a case, is correct:[5]

> The purpose of the statute is clear. It was intended to give the inmate, who had pending offenses not yet tried, an opportunity to have the sentences run concurrently consistent with the principle of law disfavoring accumulations of sentences. This purpose, however, does not apply in the instance of a *new* offense committed *after* imprisonment, nor where the statute, as in the case of an escape or attempted escape, sets up a mandatory consecutive sentence. The legislature was not concerning itself with the need for dispatch in the handling of a charge brought against an inmate for offenses committed *while* in prison. [Emphasis in original.]

1988 PA 400[6] amended the 180-day rule to provide that the rule does not apply to a charge of a criminal offense committed by an inmate while incarcerated in a correctional facility, or committed after the inmate has escaped from a facility and before the inmate has been returned to the custody of the Department of Corrections.[7]

The Court of Appeals agreed with the prosecutor that Smith's unconditional plea of guilty waived any claim she might otherwise assert that her constitutional right to a speedy trial was violated.

---

NW2d 700 (1980), expressing the contrary view adopted by this Court in *Woodruff.*

[5] Cf. *People v Patterson,* 392 Mich 83; 219 NW2d 31 (1974), holding that the statute does not require that sentence credit, MCL 769.11b; MSA 28.1083(2), be granted where the sentence for the offense of which the defendant is convicted begins at the expiration of the term or terms of the sentence that the person is serving.

[6] The warrant charging Smith with prison escape was issued in February, 1987. She pleaded guilty on March 7, 1988.

[7] See n 1. MCL 780.132; MSA 28.969(2) provides that the Department of Corrections shall notify each prisoner of any request forwarded under § 1. MCL 780.133; MSA 28.969(3) provides that in the event that the time limitation set forth in § 1 is violated, "no court of this state shall any longer have jurisdiction," and "the court shall enter an order dismissing the same with prejudice."

Although this Court's order granting leave to appeal[8] was without limitation, we are now persuaded that this issue should not be further reviewed by this Court.

The Court of Appeals is reversed and the conviction is reinstated.

GRIFFIN and MALLETT, JJ., concurred with LEVIN, J.

BOYLE, J. (*concurring in the result*). I agree with Justice BRICKLEY's analysis and conclusion that an unconditional guilty plea waives a claim of violation of the federal and Michigan constitutional right to a speedy trial, US Const, Am VI; Const 1963, art 1, § 20.

I also concur in Justice LEVIN's conclusion that *People v Woodruff,* 414 Mich 130; 323 NW2d 923 (1982), was incorrectly decided and that the statutory 180-day rule, MCL 780.131 *et seq.*; MSA 28.969(1) *et seq.* does not apply to this case. However, I write separately to express my view that, assuming the applicability of the rule, a defendant's unconditional guilty plea will waive any claim of error based on its violation. The 180-day rule requires:

Whenever the department of corrections receives notice that there is pending in this state any untried warrant, indictment, information, or complaint setting forth against any inmate of a correctional facility of this state a criminal offense for which a prison sentence might be imposed upon conviction, the inmate shall be brought to trial within 180 days after the department of corrections causes to be delivered to the prosecuting attorney of the county in which the warrant, indictment, information, or complaint is pending written notice of the place of imprisonment of the

[8] *People v Smith,* 436 Mich 882 (1990).

inmate and a request for final disposition of the warrant, indictment, information, or complaint. [MCL 780.131; MSA 28.969(1).]

MCL 780.133; MSA 28.969(3) requires dismissal with prejudice where an action is not commenced within the 180-day time limit set forth in the act:

> In the event that, within the time limitation set forth in section 1 of this act, action is not commenced on the matter for which request for disposition was made, no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

When the statute is applicable as a threshold matter, an unconditional guilty plea waives the right to assert a violation of the 180-day rule.

It is generally stated that a guilty plea "waives all nonjurisdictional defects in the proceedings." *People v Alvin Johnson*, 396 Mich 424, 440; 240 NW2d 729 (1976), cert den sub nom *Michigan v Johnson*, 429 US 951 (1976). In *People v New*, 427 Mich 482; 398 NW2d 358 (1986), we elaborated on the meaning of this statement, drawing from the United States Supreme Court cases of *Tollett v Henderson*, 411 US 258; 93 S Ct 1602; 36 L Ed 2d 235 (1973), and *Menna v New York*, 423 US 61, 62, n 2; 96 S Ct 241; 46 L Ed 2d 195 (1975). The Court quoted from *Menna* as follows:

> "Neither *Tollett v Henderson*, 411 US 258 (1973), nor our earlier cases on which it relied, e.g., *Brady v United States*, 397 US 742 [90 S Ct 1463; 25 L Ed 2d 747] (1970), and *McMann v Richardson*, 397 US 759 [90 S Ct 1441; 25 L Ed 2d 763] (1970), stand for the proposition that counseled guilty

pleas inevitably 'waive' all antecedent constitutional violations. If they did so hold, the New York Court of Appeals might be correct. However, in *Tollett* we emphasized that waiver was not the basic ingredient of this line of cases, 411 US 266. The point of these cases is that a counseled plea of guilty is an admission of factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual guilt from the case. In most cases, factual guilt is a sufficient basis for the State's imposition of punishment. A guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." [*New, supra,* pp 487-488.]

The Court in *New* held that a defendant could raise only such rights and defenses as "would preclude the state from obtaining a valid conviction against the defendant." *Id.* at 491. The *New* Court reasoned:

Such rights and defenses "reach beyond the factual determination of defendant's guilt and implicate the very authority of the state to bring a defendant to trial . . . ." [*People v*] *White,* 411 Mich [366] 398 [308 NW2d 128 (1981)] (MOODY, J., concurring in part and dissenting in part). In such cases, the state has no legitimate interest in securing a conviction. On the other hand, where the defense or right asserted by defendant relates solely to the capacity of the state to prove defendant's factual guilt, it is subsumed by defendant's guilty plea. [*Id.* at 491.]

Thus, the shorthand question whether violation of the 180-day rule is a "jurisdictional defect" which cannot be waived, may be rephrased as whether the statutory 180-day rule implicates the

very authority of the state to bring defendant to trial.

This requires examination of the object of the statute and the harm it is designed to remedy. The title of the act indicates that its purpose is "to dispose of untried warrants, indictments, informations or complaints against inmates of penal institutions of this state." We stated in *People v Hill,* 402 Mich 272, 282; 262 NW2d 641 (1978), that "[a] defendant's constitutional right to a speedy trial is legislatively observed in . . . the 180-day statute, which specifically addressed speedy trial rights of those already incarcerated in state prison . . . ." I find these purposes wholly consistent with one another. The disposition of untried warrants against prisoners, obviously a desirable aim, has the further purpose of protecting the defendant's constitutional right to a speedy trial. Neither of these interests concerns the very authority of the state to prosecute. The speedy trial right primarily seeks to protect the integrity of the factual determination of guilt or innocence, a question definitively settled by a counseled and voluntary plea of guilty. Especially in view of the clear rule that the constitutional speedy trial right is waived by a valid plea of guilty, *Tiemens v United States,* 724 F2d 928 (CA 11, 1984), cert den 469 US 837 (1984), it would be anomalous to hold that the statutory right could never be waived. The state's interest in the expeditious disposition of untried warrants against prisoners, while important, does not implicate the very authority of the state to proceed. This case contrasts with *Menna v New York, supra,* where the United States Supreme Court held that a claim of a double jeopardy violation survived a guilty plea because the constitutional provision would have precluded the state "from haling a defendant into court on a charge . . . ."

423 US 62. Other state policies which are furthered by the statutory 180-day rule include policies of rehabilitation and of concurrent sentencing. See *People v Woodruff, supra* at 137.[1] These interests simply have nothing to do with the state's ability to proceed against defendant in the first place; they do not implicate " 'the very authority of the state to bring a defendant to trial . . . .' " *New, supra* at 491.

Because the interests implicated in the 180-day rule do not relate to the very authority of the state to prosecute, the relevant question becomes whether the statutory remedy of dismissal with prejudice may be relinquished by a valid and unconditional plea of guilty. This is nothing more than a question of statutory interpretation: Did the Legislature in MCL 780.133; MSA 28.969(3) intend to remove the state's authority to prosecute the defendant?

---

[1] The Report of the Council for State Governments on 1957 Suggested State Legislation contains intrastate detainer provisions substantially similar to those contained in MCL 780.131 *et seq.*; MSA 28.969(1) *et seq.* According to the report, the legislation was intended to address concerns relating to rehabilitation as well as sentencing:

> The prison administrator is thwarted in his efforts toward rehabilitation [by the existence of a warrant against a person already in custody]. The inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program. He often must be kept in close custody, which bars him from treatment such as trustyships, moderations of custody and opportunity for transfer to farms and work camps. . . .
>
> The sentencing judge is likewise often thwarted by the detainer system. . . . The judge is at a loss when faced with detainers already filed, and with the possibility of other detainers. A rather long sentence may be indicated, but the judge hesitates to give such a sentence if the offender is going to serve subsequent sentences, or if he stands to lose the privilege of parole because of a detainer. The incidental first offender may, and sometimes does, serve years in prison because he has violated the law in several jurisdictions, although only a short sentence or probation would accomplish the necessary rehabilitation. [*Id.* at 74.]

I do not agree that MCL 780.133; MSA 28.969(3) unambiguously refers to the very power of the state to prosecute the defendant. The statute indeed uses the term "jurisdiction," but that phrase is susceptible of various meanings within the realm of criminal procedure. Jurisdiction may refer to the authority of the court to try an offense of a certain kind, or it may concern whether a particular court has authority to try a particular person. 1 LaFave & Israel, Criminal Procedure, § 16.2(a), p 342. The former, subject-matter jurisdiction refers to the power of the court " ' "to exercise judicial power over a. class of cases; not the particular case before it, but rather the abstract power to try a case of the kind or character of the one pending . . . ." ' " *People v Johnson,* 427 Mich 98, 106, n 7; 398 NW2d 219 (1986), quoting *Joy v Two-Bit Corp,* 287 Mich 244, 253; 283 NW 45 (1938). Personal jurisdiction deals with the authority of the court over particular persons. See *Johnson, supra* at 106, n 7. It is a fundamental principle that defects in personal jurisdiction may be waived, whereas subject-matter jurisdiction may not be waived and may be raised at any time.

Justice BRICKLEY opines that the language of the statute is so clear that "[t]he traditional personal versus subject-matter jurisdiction distinction is not pertinent . . . ." *Post,* p 741. I disagree. The statute does indeed decree that when an action is not timely commenced as required by the statutory 180-day rule, "no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." MCL 780.133; MSA 28.969(3). Obviously, the statute contemplates a remedy of dismissal with prejudice and termination of "jurisdiction." But that observation does not go far in

answering whether the remedy may be waived by
a guilty plea. The statute is silent regarding the
effect of a guilty plea on its guarantees. Thus we
must apply the appropriate principles of statutory
construction and of law to determine whether the
statutory remedy may be waived by plea. In deter-
mining whether the statutory right is capable of
waiver, the traditional distinction between per-
sonal and subject-matter jurisdiction becomes cru-
cial.

Given the distinct meanings of the word "juris-
diction," the term, as employed in MCL 780.133;
MSA 28.969(3), cannot be said to unambiguously
refer to the power of the court to entertain a class
of cases, i.e., subject-matter jurisdiction. Rather,
the statute represents a limitation on the power to
prosecute in specified circumstances, viz., where an
existing warrant, information or charge against a
prisoner is not disposed of in a timely manner as
provided in MCL 780.131; MSA 28.969(1). The
interpretation of the word "jurisdiction" as used in
MCL 780.133; MSA 28.969(3) to mean subject-
matter jurisdiction reads too much into the stat-
ute. The statute does not dictate the class or kind
of cases a court can hear; it does not refer to
subject-matter jurisdiction. Instead, the statute
decrees that a court loses its power over a *particu-
lar* matter in specified circumstances. Violation of
the statute is therefore a "nonjurisdictional" de-
fect, and a claim of error based on noncompliance
with the statute does not survive an unconditional
guilty plea. *Alvin Johnson, supra* at 440.

A review of the law in other jurisdictions fur-
ther reinforces the conclusion that a claim of error
based upon violation of the 180-day rule is sub-
sumed by an unconditional guilty plea. It is the
general rule throughout the various states that a
guilty plea waives a violation of a statutory speedy

trial right.[2] The federal courts also hold that a
claim of error based upon violation of the federal
Speedy Trial Act, 18 USC 3161 *et seq.,* is nonjuris-
dictional and therefore waived by a guilty plea
that does not expressly reserve the issue. *Lebowitz
v United States,* 877 F2d 207, 209 (CA 2, 1989);
*United States v LoFranco,* 818 F2d 276, 277 (CA 2,
1987).[3]

Of particular interest is a Connecticut case,
*Craig v Bronson,* 202 Conn 93; 520 A2d 155 (1987),
in which the Connecticut Supreme Court inter-
preted a provision of its own intrastate detainer
act, which is nearly identical to MCL 780.133;
MSA 28.969(3), and concluded that the statute did
"not decree a loss of jurisdiction of the subject
matter of a criminal action as a sanction for
noncompliance with the time limitation of [the
applicable Connecticut statutory provision], but
only a loss of jurisdiction over the person of the

[2] See *Kennedy v State,* 297 Ark 488; 763 SW2d 648 (1987) (a plea of
guilty waived the right to a speedy trial contained in state rules of
criminal procedure); *People v Tomasello,* 98 Ill App 3d 588; 424 NE2d
785 (1981) (the defendant waived her statutory speedy trial right by
pleading guilty); *Wright v Indiana,* 496 NE2d 60 (Ind, 1986) (the right
to a speedy trial contained in a state court rule and a statute was
waived by a guilty plea); *State v Kitt,* 232 Neb 237; 440 NW2d 234
(1989) (a defendant who fails to move for dismissal prior to pleading
guilty waives the statutory speedy trial right; a guilty plea constitutes
waiver of every defense, procedural, statutory, or constitutional,
except the defense that the information or complaint is insufficient to
charge a criminal offense); *People v O'Brien,* 56 NY2d 1009; 439 NE2d
355 (1982) (a statutory speedy trial right was forfeited by a guilty
plea); *State v Kelley,* 57 Ohio St 3d 127; 566 NE2d 658 (1991) (a guilty
plea waives the defendant's right to challenge a conviction on statu-
tory speedy trial grounds); *State v Anderson,* 417 NW2d 403 (SD,
1988) (noncompliance with a 180-day rule created by court rule was a
nonjurisdictional defect and was waived by a guilty plea).

[3] The federal rule of waiver by guilty plea is codified in 18 USC
3162(a)(2), which provides that "[f]ailure of the defendant to move for
dismissal prior to trial or entry of a plea of guilty or nolo contendere
shall constitute a waiver of the right to dismissal . . . ." Federal case
law establishes further that *even where a motion for dismissal is
made,* a subsequent plea waives a claim of error premised on violation
of the Speedy Trial Act. *Lebowitz, supra.*

prisoner . . . ." *Id.* at 105. Thus, the court found
that error premised on violation of the statute
could be waived, and had been waived when the
defendant withdrew his motion to dismiss the
information as part of a plea bargain. *Id.* at 100-
101.

The Connecticut Supreme Court found no clear
answer in the statutory language to the question
whether the statute decreed a loss of subject mat-
ter rather than personal jurisdiction. Thus, the
court sought other indications of legislative intent.
The court analogized the provisions of its own
intrastate detainer act to those of the interstate
agreement on detainers (IAD), which provides a
sanction of dismissal with prejudice when trial is
not brought within the time limits set by statute.
Similar to both the Connecticut and our own
intrastate detainer acts, the IAD provides:

> If trial is not had on any indictment, informa-
> tion or complaint contemplated hereby prior to the
> prisoner's being returned to the original place of
> imprisonment . . ., such indictment, information
> or complaint shall not be of any further force or
> effect, and the court shall enter an order dismiss-
> ing the same with prejudice.[4] [Council of State
> Governments, Suggested State Legislation Pro-
> gram for 1957, p 83.]

The court in *Craig* noted that its own intrastate
detainer act was modeled after a proposal of the
Committee of State Officials on Suggested State
Legislation in its 1957 program. *Id.* at 104. The
committee report noted that the purpose of the
proposed intrastate provision was the same as that
intended by the IAD, of which the committee also
advocated adoption. Council of State Governments,

---

[4] The IAD was enacted into Michigan law and appears at MCL
780.601 *et seq.*; MSA 4.147(1) *et seq.*

*supra* at 78.[5] Thus, the *Craig* court concluded, the Connecticut detainer provision should be interpreted consistent with the IAD.

As the court in *Craig* observed, a guilty plea is held to waive violation of the time limits set forth in the IAD. *Kowalak v United States,* 645 F2d 534 (CA 6, 1981).[6] The *Craig* court concluded that its own intrastate provision should be similarly interpreted.

While the legislative history of MCL 780.131 *et seq.*; MSA 28.969(1) *et seq.* does not positively reveal that our intrastate detainer act was modeled after the 1957 proposed legislation, I find the analysis contained in *Craig* persuasive.[7] Like the

---

[5] The concerns sought to be addressed by the proposed intrastate detainer act related to rehabilitation of prisoners and sentencing. See n 1. The committee stated that "[t]he [Interstate] Agreement on Detainers applies the same principles embodied in the intrastate act to the interstate field." Council of State Governments, *supra* at 78.

[6] See also *United States v Palmer,* 574 F2d 164 (CA 3, 1978), cert den 437 US 907 (1978) (the IAD constitutes a set of procedural rules; violation is waived by a guilty plea); *Camp v United States,* 587 F2d 397 (CA 8, 1978) (violation of the IAD is nonjurisdictional error, waivable by a criminal defendant); *Beachem v Missouri Attorney General,* 808 F2d 1303 (CA 8, 1987) (the defendant waived any IAD violations when he pleaded guilty).

Our Court of Appeals in *People v Office,* 126 Mich App 597; 337 NW2d 592 (1983), stated, with citation of *People v Johnson,* 396 Mich 424; 240 NW2d 729 (1976), and without further analysis, that a guilty plea did not waive the right to assert a violation of the IAD. However, because the IAD is a congressionally sanctioned compact, its construction presents a federal question. *People v McLemore,* 411 Mich 691, 693-694; 311 NW2d 720 (1981). Thus, we accord greater authority to the federal courts' interpretation of the IAD than to that of the Court of Appeals.

[7] MCL 780.133; MSA 28.969(3) is virtually identical to the suggested legislation, reproduced below:

> In the event that the action is not brought to trial within the period of time as herein provided, no court of this state shall any longer have jurisdiction thereof, nor shall the untried [indictment, information or complaint] be of any further force or effect, and the court shall enter an order dismissing the same with prejudice. [Council of State Governments, *supra* at 78.]

Connecticut Supreme Court, I believe it is appropriate to interpret our own intrastate detainer act consistently with the federal courts' interpretation of the IAD. Because violation of the time limits set forth in the IAD is waived by an unconditional guilty plea, I would hold analogously that violation of Michigan's statutory 180-day rule is also waived by an unconditional guilty plea.

In conclusion, it is my view that where the statutory 180-day rule is applicable, a defendant waives any error based on violation of the rule by unconditionally pleading guilty. To state otherwise is to ascribe to the Legislature an intent to preclude a counseled defendant from voluntarily relinquishing the protection of the statute, and would separate Michigan from the great weight of authority holding that an unconditional guilty plea waives noncompliance with statutory provisions for speedy trial. I concur in the reversal of the judgment of the Court of Appeals.

RILEY and GRIFFIN, JJ., concurred with BOYLE, J.

BRICKLEY, J. (*dissenting*). Although our grant of leave to appeal in this case did not specify issues for consideration, the appellant framed the issues as whether the defendant's Michigan and federal constitutional rights to speedy trial and her statu-

---

Like the Connecticut statute, which was modeled after the suggested legislation, MCL 780.131 *et seq.*; MSA 28.969(1) *et seq.* was enacted in 1957. 1957 PA 177. The comparable provision of the Michigan act provides:

> In the event that, within the time limitation set forth in section 1 of this act, action is not commenced on the matter for which request for disposition was made, no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the court shall enter an order dismissing the same with prejudice. [MCL 780.133; MSA 28.969(3).]

tory right to a trial within 180 days, MCL 780.131; MSA 28.969(1), were waived by an unconditional guilty plea. Not only does the majority fail to resolve a conflict that now exists in the Court of Appeals, it incorrectly interprets the 180-day rule and ignores the well-established rules of stare decisis. Accordingly, I would hold that this Court's decision in *People v Woodruff,* 414 Mich 130; 323 NW2d 923 (1982), properly interpreted the 180-day rule to apply to a prisoner in the defendant's circumstances. Furthermore, I would affirm the Court of Appeals decision, holding that although the defendant waived her constitutional rights to a speedy trial by her unconditional guilty plea, her claim that the 180-day rule was violated is not waived by that same plea.

### I. INTERPRETATION OF MCL 780.131 *ET SEQ.*; MSA 28.969(1) *ET SEQ.*

In *Woodruff, supra* at 137, this Court held that the 180-day rule applied to any untried charge against an inmate even if the offense was committed in prison or carried a mandatory consecutive sentence. The Court applied a statutory rule of construction that requires penal statutes to be strictly construed, *People v Goulding,* 275 Mich 353; 266 NW 378 (1936); *Gay v Webster,* 277 Mich 255, 259; 269 NW 164 (1936), especially when such an interpretation will be beneficial to the defendant. *People v Lockhart,* 242 Mich 491; 219 NW 724 (1928). The majority here states that a more liberal interpretation of the 180-day rule is warranted because of a legislative amendment that occurred over six and one-half years after our decision in *Woodruff.* On the basis of this amendment, the majority would overturn *Woodruff* and find that the statute does not apply to the defen-

dant even though her plea and conviction occurred over one year before the amendment to the statute became effective. However, under the rules of statutory interpretation and the doctrine of stare decisis, the majority's reasoning is unpersuasive.[1]

The majority's use of the subsequent statutory amendment of the 180-day rule to overrule *Woodruff* can be attacked on a number of grounds. One rule of statutory construction requires that when a statute is clear and unambiguous, an amendment that materially changes the statute is presumed to indicate a change in existing legal rights. 1A Sands, Sutherland Statutory Construction (4th ed), § 22.30, p 265. The author of the lead opinion has also previously applied this rule. See *Sam v Balardo,* 411 Mich 405, 445; 308 NW2d 142 (1981) (LEVIN, J., dissenting). Even if we were to be influenced by a subsequent Legislature's amendment of our decision in *Woodruff,* the Legislature, in fact, let that decision stand for over six and one-half years before changing the statute and did not even mention *Woodruff* in doing so. Instead, the lapse in time simply indicates that the Legislature felt that the statute should be amended for reasons other than our decision in *Woodruff.*[2] The amendment, therefore, results in a change of existing legal rights and the Court should refrain from using the amendment to interpret the preëxisting

[1] The majority seems to imply that because *Woodruff* was a per curiam opinion, it should be easier to overturn. However, a per curiam opinion is as persuasive as an authored opinion and shows that the Court was united in its reasoning. *Dowling v Salliotte,* 83 Mich 131, 134-135; 47 NW 225 (1890), overruled on other grounds *In re Lewis,* 85 Mich 340; 48 NW 580 (1891).

[2] The report on the amendments by the Senate Analysis Section, although not controlling on legislative intent, indicates that the Legislature's two main concerns included the time constraints imposed on prosecutors and judges when attempting to comply with the 180-day rule and miscalculations of the 180-day period that would lead to a dismissal of charges against a prisoner. Senate Analysis Section, SB 344, October 13, 1987.

statute. Instead, the Court should simply apply the plain and unambiguous language of the statute, as noted in *Woodruff,* 414 Mich 135-136, to the present case.

The majority also, by applying the language of the new statute, in effect applies this penal statute retroactively when the Legislature has not deemed it necessary to do so. Not only does this contravene the rule that amendments to statutes are generally inapplicable when transactions and events are completed prior to their enactment, 1A Sands, Sutherland Statutory Construction, *supra,* § 22.36, pp 300-301, but it also attempts to apply a statute retroactively without undertaking an analysis of whether that statute should be so applied. See *People v Hampton,* 384 Mich 669; 187 NW2d 404 (1971). The amendments here should not be applied retroactively. Their purpose was to change the law, not to clarify what the statute meant. The Legislature did not deem it appropriate to apply the amendments retroactively, and this Court should not attempt to legislate such a change by its opinion.

The doctrine of stare decisis also requires this Court to uphold *Woodruff.* This doctrine exists to promote uniformity, certainty, and stability in the law, *Parker v Port Huron Hosp,* 361 Mich 1, 10; 105 NW2d 1 (1960), and when a court of competent jurisdiction decides a case, that decision becomes precedent which should not be lightly overturned. *People v Jamieson,* 436 Mich 61, 79; 461 NW2d 884 (1990). Under the doctrine of stare decisis, the Court must, before overruling a prior decision, be convinced that the decision was wrong and that less injury will result from the overturning decision. *McEvoy v Sault Ste Marie,* 136 Mich 172; 98 NW 1006 (1904). However, in overturning *Woodruff,* the majority has not advanced any arguments

that it was incorrectly decided. If the lead opinion stands, adherence to precedent will be further eroded without a corresponding benefit to the administration of justice.

Finally, neither the parties nor any of the lower courts discussed, argued, or questioned whether MCL 780.131-780.133; MSA 28.969(1)-28.969(3) applied to the defendant. This issue is simply not properly before the Court. MCR 7.302(F)(4)(a).

For these reasons, I would adhere to the decision in *People v Woodruff,* and hold that it applies to this defendant because the amendments of the 180-day rule were not effective until after her plea to the underlying charges. Because I find that the statute still applies, a determination must also be made regarding whether the defendant's constitutional and statutory rights were waived by her unconditional guilty plea.

## II. WAIVER OF RIGHTS BY UNCONDITIONAL GUILTY PLEA

A majority of the Court of Appeals found that the defendant's unconditional guilty plea did not waive her rights under the 180-day rule statute, but that she did waive her constitutional speedy trial claims. 183 Mich App 537, 541-542; 455 NW2d 719 (1990). While I agree with the conclusions reached by the majority in the Court of Appeals, I undertake a review of these issues in the hope of helping to clarify its reasoning and resolve a conflict which now exists in that Court. Compare *People v Eaton,* 184 Mich App 649; 459 NW2d 86 (1990); *People v Rivera,* 164 Mich App 670; 417 NW2d 569 (1987); *People v Williams,* 145 Mich App 614; 378 NW2d 769 (1985); *People v Parshay,* 104 Mich App 411; 304 NW2d 593 (1981), with *People v Sickles,* 162 Mich App 344; 412

NW2d 734 (1987); *People v Leroy,* 157 Mich App 334; 403 NW2d 555 (1987); *People v Farmer,* 127 Mich App 472; 339 NW2d 218 (1983); *People v Davis,* 123 Mich App 553; 332 NW2d 606 (1983).

### A. WAIVER BY GUILTY PLEA

In *People v New,* 427 Mich 482; 398 NW2d 358 (1986), we reviewed which rights, both constitutional and statutory, would be waived by a defendant's unconditional guilty plea. We set forth a standard that applied the United States Supreme Court's interpretation of guilty-plea waivers and indicated that "where a defendant's claim is one that would preclude the state from ever prosecuting the defendant for the crime regardless of his factual guilt, a guilty plea does not waive the defendant's right to subsequently raise that claim." *New,* 427 Mich 488, citing with approval MOODY, J., concurring in part and dissenting in part in *People v White,* 411 Mich 366, 394-399; 308 NW2d 128 (1981). We held that once the defendant unconditionally pleads guilty, the defendant can only appeal those rights and defenses that implicate the very authority of the state to bring the defendant to trial. *New,* 427 Mich 491 (quoting MOODY, J., *White,* 411 Mich 398). We specifically adopted Justice MOODY's analysis on which rights can be waived by a guilty plea, reiterating that

> "[o]nly those rights and defenses which reach beyond the factual determination of defendant's guilt and implicate the very *authority* of the state to bring a defendant to trial are preserved. . . . When a defendant pleads guilty, he waives his right to a trial. Therefore, he necessarily gives up all the rights and challenges associated with that

trial. Thus, important safeguards relating to the *capacity* of the state to prove defendant's factual guilt, and those regulating the prosecution's conduct at trial are among those defendant waives when he pleads guilty. *These rights,* which essentially relate to the gathering and presentation of evidence, *are lost even if a successful challenge would provide a 'complete defense' by in effect rendering the state unable to continue with the prosecution."* [427 Mich 492-493. Citations omitted, first and second emphasis in original, third emphasis added.]

As this decision indicates, only those rights that prevent the state from initially bringing the defendant to trial are preserved in the face of an unconditional guilty plea. As noted by Justice LEVIN in *People v Reid,* 420 Mich 326; 362 NW2d 655 (1984), another way to determine what rights are waived by an unconditional guilty plea is to distinguish between those defenses that are "similar" to jurisdictional defenses that are not waived and rights that are "similar" to nonjurisdictional defenses that are waived. With this background, the Court can determine whether the defendant has waived her constitutional and statutory rights.

### B. APPLICATION TO THE CONSTITUTIONAL RIGHT TO SPEEDY TRIAL

Although the defendant has only argued that her right to a speedy trial under the Michigan Constitution is not waived, the result would be the same whether the defendant had alleged rights under either the Michigan Constitution or the federal constitution. The Michigan Constitution, Const 1963, art 1, § 20, states:

In every criminal prosecution, the accused shall
have the right to a speedy and public trial . . . .[3]

The federal constitution, US Const, Am VI, also
states:

In all criminal prosecutions, the accused shall
enjoy the right to a speedy and public trial . . . .

We have always interpreted these two constitu-
tional rights in a similar manner. See *People v
Hill*, 402 Mich 272; 262 NW2d 641 (1978); *People v
Hall*, 391 Mich 175, 183-185; 215 NW2d 166 (1974);
*People v Harrison*, 386 Mich 269; 191 NW2d 371
(1971). To determine whether the constitutional
right to speedy trial was waived by the defendant's
unconditional guilty plea, we should review
whether that right is concerned with the factual
guilt of the defendant or the ability of the state to
bring charges against the defendant.

We previously determined that one purpose of
the constitutional right to speedy trial is to try the
accused within a reasonable period of time. *People
v Den Uyl*, 320 Mich 477; 31 NW2d 699 (1948). We
determined that the right to speedy trial both
facilitates prosecution and prevents undue and
prolonged prosecutions that may harm the defen-
dant. *People v Collins*, 388 Mich 680; 202 NW2d
769 (1972). The right to speedy trial also prevents
undue and oppressive incarceration, minimizes the
anxiety and concern that normally accompany
criminal accusations, and limits the possibility
that long delays will impair the ability of the
accused to defend himself. *United States v Ewell*,
383 US 116, 120; 86 S Ct 773; 15 L Ed 2d 627
(1966), overruled on other grounds *Chapman v*

---

[3] This constitutional right to speedy trial has also been enacted into
statute. MCL 768.1; MSA 28.1024.

*California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967). The United States Supreme Court has stated that prejudice to the defendant's ability to defend himself at trial is the most important concern encompassed by the right to speedy trial. *Barker v Wingo,* 407 US 514, 532; 92 S Ct 2182; 33 L Ed 2d 101 (1972). Factors used to determine prejudice to the defendant's ability to defend himself include whether witnesses will become unavailable, whether witnesses will have a loss of memory and the credibility of witnesses before the court.

I find that two federal cases help analyze whether the constitutional right to speedy trial is waived by the defendant's unconditional guilty plea. Although many of the federal circuit courts have found that the constitutional right to speedy trial is waived by a guilty plea, see, e.g., *United States v LoFranco,* 818 F2d 276 (CA 2, 1987); *Tiemens v United States,* 724 F2d 928 (CA 11, 1984); *United States v Saldana,* 505 F2d 628 (CA 5, 1974); *Pate v United States,* 297 F2d 166 (CA 8, 1962), only one has stated the reasons why such a finding is appropriate. *United States v O'Donnell,* 539 F2d 1233 (CA 9, 1976).[4] The Ninth Circuit indicated that the purpose of the Sixth Amendment is to insure that the factual guilt of the defendant is validly established. The *O'Donnell* court stated:

> The existence of [Sixth Amendment] violations is consistent with guilt as a matter of fact. If guilt can be validly established such violations are not logically inconsistent therewith. While such violations preclude the establishment of guilt by trial, that is the extent of their reach. The establish-

---

[4] Although *United States v Gaertner,* 583 F2d 308 (CA 7, 1988), also analyzed this issue, that court simply reiterated the reasoning in *O'Donnell.*

ment of guilt by a proper plea is not condemned by these protections. The Constitution protects the accused from conviction by trial but not a conviction by way of a plea of guilty. [*Id.* at 1237.]

As this analysis indicates, the constitutional right to speedy trial is concerned with establishing guilt as a matter of fact. Once guilt is established by a proper unconditional guilty plea, the constitutional right is no longer applicable.

I also find the reasoning in *United States v MacDonald,* 435 US 850; 98 S Ct 1547; 56 L Ed 2d 18 (1978), although concerned with the issue of appealability, especially persuasive in its review of the constitutional right to speedy trial. As the United States Supreme Court noted, the resolution of a speedy trial claim requires a careful assessment of the particular facts of a case. *MacDonald,* 435 US 858. The Court indicated that most speedy trial claims are best considered "only after the relevant facts have been developed at trial." *Id.* The Court continued in this vein of analysis, stating that the events of trial and the question of prejudice to the defense are intertwined. *Id.* at 859. The Court then made the following statements which clearly indicate that the concern of the constitutional right to speedy trial is determining the factual guilt of the defendant:

Even if the degree of prejudice could be accurately measured before trial, a speedy trial claim nonetheless would not be sufficiently independent of the outcome of the trial to warrant pretrial appellate review. . . . [A] *central interest served by the Speedy Trial Clause is the protection of the factfinding process at trial.* The essence of a defendant's Sixth Amendment claim in the usual case is that the passage of time has frustrated his ability

to establish his innocence of the crime charged. Normally, it is only after trial that that claim may fairly be assessed. . . . It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial. . . . Furthermore, in most cases, as noted above, it is difficult to make the careful examination of the constituent elements of the speedy trial claim before trial. [*Id.* at 859-861. Emphasis added.]

I agree with this analysis and would find that the constitutional right to speedy trial, whether under the Michigan or federal constitution, relates to determining the factual guilt of the defendant. The right to speedy trial is concerned with the prejudice to the defendant in defending himself against the charges brought by the state, with the memory of witnesses, and the availability of those witnesses. It is not concerned with the ability of the state to bring the charges against a defendant in court. Therefore, I would hold that the constitutional right to speedy trial is waived by a defendant's unconditional guilty plea. I would affirm the decision of the Court of Appeals on this issue.

### C. APPLICATION TO THE STATUTORY 180-DAY RULE

MCL 780.133; MSA 28.969(3) limits the ability of a court to decide a matter that violates the 180-day rule:

In the event that, within the time limitation set forth in section 1 of this act, action is not commenced on the matter for which request for disposition was made, *no court of this state shall any longer have jurisdiction thereof, nor shall the untried warrant, indictment, information or complaint be of any further force or effect, and the*

*court shall enter an order dismissing the same
with prejudice.* [Emphasis added.][5]

One panel of the Court of Appeals, in addition to
the dissent in this case, has stated that the refer-
ence to jurisdiction in this section refers to per-
sonal jurisdiction and that the bar to the court's
jurisdiction is waived by a defendant's uncondi-
tional guilty plea. See *People v Eaton, supra.*

As noted by the Court of Appeals majority in
this case, the question is whether the statute
refers to the authority of the state to bring an
action in court or to the factual guilt of the
defendant. The only issue under the statute relates
to the expiration of the pertinent 180-day period,
not the ability to determine guilt or innocence,
*New, supra* at 492-493, and no trial is needed to
determine whether the 180-day rule has been com-
plied with. As we noted in *People v Harrison,
supra,* if the prosecution does not comply with the
statute, the trial court has no jurisdiction over the
"matter." *Harrison,* 386 Mich 276. *Harrison* indi-
cates that we previously interpreted this unambig-
uous statute as removing the subject-matter juris-
diction of the court and the ability of the state to
bring a prosecution against a defendant in respect
to the 180-day rule. In fact, it is difficult to imag-
ine how the Legislature could have more clearly
stated the principle that there can be no trial if
the 180-day rule has not been complied with.

The language of the statute indicates that, in
addition to divesting the court of all jurisdiction
over the defendant, the court must dismiss the
charges before it with prejudice. The statute also
indicates that the untried warrant, indictment,

---

[5] This language was in the statute as it existed at the time of the
defendant's plea and conviction. Unlike §§ 1, 2, this portion of the
statute was not changed by the 1988 amendments.

information or complaint has no further force or effect—that it is null and void. The statute, on its face, refers to the ability of the trial court to hear a prosecution brought by the state regardless of the merits. Because no trial court can hear the prosecution's case, the statute encompasses a right that prevents the state from bringing the defendant to trial and, therefore, is concerned with the authority of the prosecution to bring an action. The traditional personal versus subject-matter jurisdiction distinction is not pertinent here where the Legislature has spoken so clearly and emphatically. Such a disclaimer of authority cannot be restored by a defendant's waiver. I would find that the language of this statute clearly and unambiguously refers to the jurisdiction of the court to hear the case regardless of its merits and removes the ability of the state to prosecute the defendant.[6]

I agree with the analysis by the Court of Appeals in *People v Parker*, 21 Mich App 399; 175 NW2d 879 (1970), which specifically dealt with whether the 180-day rule was waived by the defendant's unconditional guilty plea. That Court stated:

> The clear import of [§ 3] is to deny jurisdiction to the courts where the provisions of § 1 are not met. . . . [T]he Court stated, with regard to the fact that the prosecutor therein had previously consented to the motion: "This Court has never held that jurisdiction of the subject-matter can be

---

[6] Justice BOYLE suggests that MCL 780.133; MSA 28.969(3) may be ambiguous and, by analogy, should be interpreted similarly to federal opinions on the Interstate Agreement on Detainers (IAD). MCL 780.601-780.608; MSA 4.147(1)-4.147(8). However, not only does the IAD fail to include the important language of MCL 780.133; MSA 28.969(3) that "no court of this state shall any longer have jurisdiction thereof," but the IAD also states that one of its specific purposes is to abate the "difficulties in securing speedy trial of persons already incarcerated in other jurisdictions." Therefore, not only is the IAD dissimilar on its face, but also in its purpose. See *infra*, p 743.

conferred by consent or waiver. . . . '[J]urisdiction comes solely from the law, in no degree from consent of litigants. So that neither consent nor anything else can authorize a court to act in a cause outside the sphere which the law has ordained for it.' " [*Id.* at 404-405 (citing *Nichols v Houghton Circuit Judge,* 185 Mich 654; 152 NW 482 [1915]).]

Defendant was incapable of conferring on the trial court the jurisdiction which had been removed by statute. *The trial court was without jurisdiction to accept the guilty plea and the untried complaint, upon which the case was based, was void at the time of the plea.* The plea was, therefore, without effect and cannot act as an estoppel. By the terms of the statute the only proper action for the trial court was to enter an order dismissing the case with prejudice. [*Parker, supra* at 405-406. Emphasis added.]

This decision correctly analyzed the statute currently before this Court and correctly found that the 180-day rule is a defense that is similar to a jurisdictional matter.

Even assuming arguendo that the statutory language was unclear or ambiguous, the purpose of the 180-day rule also supports a conclusion that the defendant did not waive her rights by an unconditional guilty plea. In contrast to the constitutional right to speedy trial, the purpose of the statute is not to deter prejudice to the defendant, although that is one of the effects. As noted in *Woodruff, supra* at 137, the purpose of the statute is to clear away untried accusations against prison inmates. It also is consistent with legislatively prescribed concurrent sentencing. *Id.* While, as noted by *Woodruff,* one of the effects is to prevent prejudice incurred by the defendant due to a delayed trial, *Hill, supra* at 280, the object and

purpose of the statute extends far beyond that right. Therefore, the object and purpose of the statute also supports a conclusion that, opposite of the constitutional right to a speedy trial, the defendant did not waive this right by an unconditional guilty plea.

I conclude, as did the majority in the Court of Appeals panel in this case, that the constitutional right to speedy trial was waived by the defendant, but that the statutory right is not waived. Therefore, I would also affirm the Court of Appeals decision on this issue.

### III. CONCLUSION

Some may argue that it is inconsistent to find that a defendant's constitutional right to speedy trial is waived while a statute that also protects the right to speedy trial is not waived. However, as I have previously noted, the statutory right protects purposes and objects that are not included in a defendant's constitutional right to speedy trial. Therefore, such an interpretation is not inconsistent. I would affirm the decision of the majority of the Court of Appeals in this case and find that the defendant's conviction is reversed and vacated.[7]

CAVANAGH, C.J., concurred with BRICKLEY, J.

---

[7] While the Court of Appeals also discusses when a defendant should be considered in the custody of the Michigan Department of Corrections, that issue was not presented to this Court. During oral arguments, the prosecutor, when asked about this issue, admitted that it had been abandoned on appeal. Therefore, under MCR 7.302(F)(4)(a), I do not discuss that matter.